# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD L. HOWLETTE, JR., et al. | * | |
| v. | * | CIVIL NO. CCB-09-600 |
| HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C. | * | |

## MEMORANDUM

Plaintiffs Edward L. Howlette, Jr., and NexGen Solutions, Inc., sued the law firm of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C. ("Hall Estill"), for malpractice because of an alleged failure to file suit, before the limitations period lapsed, against various third parties. Allegedly, Plaintiffs had causes of action in tort for interference with a contract and interference with economic advantage against a company named eScout, against the Small Business Administration ("SBA"), and against the State of Maryland. Pending before the Court are Hall Estill's motion to dismiss under Rule 12(b)(6) and motion to award costs under Rule 41(d), Federal Rules of Civil Procedure. No hearing is required. Local Rule 105.6. For the reasons that follow, the motion to dismiss will be granted and the motion for costs will be denied.

Motion to Dismiss

Whether the plaintiff has satisfied the pleading standard of Rule 12(b)(6), i.e., whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), is the determinative question before the Court.

Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 1950. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

In the present case, Plaintiffs have failed to satisfy the standard of Rule 12(b)(6). Because they have claimed legal malpractice by Hall Estill in failing timely to file and pursue causes of action against others, it is necessary to evaluate whether they have adequately pleaded underlying causes of action against these third parties. As another court has explained,

> Because a plaintiff must win a "case within a case" to prevail in a legal malpractice claim . . ., it logically follows that a plaintiff pleading a legal malpractice claim in federal court must plead "a complaint within a complaint." In other words, the federal requirement that a plaintiff state facts that "plausibly" allege a cause of action necessarily extends to the description of the underlying claim that the plaintiff alleges should have been brought. After all, there would be no reason to allow a malpractice action to proceed if there was no plausible claim that the attorney improperly failed to pursue.

*Joyce v. Thompson Wigdor & Gilly LLP*, 2008 WL 2329227, at *4 (S.D.N.Y. Jun. 3, 2008) (applying New York law).[1]

Hall Estill has argued that Maryland law applies to this case, and Plaintiffs do not dispute that. In Maryland, legal malpractice may sound in either tort or contract. *See Abramson v. Wildman*, 964 A.2d 703, 711 (Md. Ct. Spec. App. 2009). The essence of the action "'is the negligent breach of the contractual duty.'" *Id.* (quoting *Flaherty v. Weinberg*, 492 A.2d 618, 627 (Md. 1985)). Plaintiffs must prove the existence of a duty between them and Hall Estill, and

---

[1] The notion that a legal malpractice claim requires proof of a case within a case has been expressed by a number of courts. *See, e.g., Rubens v. Mason*, 527 F.3d 252, 255 (2nd Cir. 2008); *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1268-69 (Fed Cir. 2007); *Anheluk v. Ohlsen*, 459 F.3d 874, 877 (8th Cir. 2006).

2

then, after satisfying that threshold element, Plaintiffs must prove the remaining elements of the applicable theory of recovery. *Flaherty*, 492 A.2d at 627.

According to Plaintiffs' first amended complaint (ECF No. 36), Howlette is the president, chief executive officer, and principal shareholder of NexGen. (Compl. ¶ 1.) Plaintiffs allege NexGen "developed a unique and innovative software program designed to revolutionize and streamline procurement procedures for small business and federal agencies working under the auspices" of the SBA. (*Id.* ¶ 2.) NexGen is a minority-owned business certified to operate as a SBA 8(a) program participant.[2] (*Id.* ¶10.) In October 2000, the SBA contracted with NexGen to develop and administer a web site through which federal agencies could conduct procurement from small businesses; the web site was to serve as the foundation for a nationwide program called SBAExchange. (*Id.* ¶ 14.) NexGen was to receive registration fees from small businesses registering with the web site to conduct business as well as transaction fees for each transaction processed through the web site. (*Id.* ¶ 15.)

To fund the venture, Howlette and NexGen borrowed money from various entities, including a program of the State of Maryland through the Maryland Small Business Development Financing Authority ("MSBDFA"), which was managed under contract by Meridian Management Group, Inc. ("MMG"). (*Id.* ¶¶ 4, 5, 17.) MMG approved and made a series of loans to NexGen. (*Id.* ¶ 18.) Plaintiffs indicate they struggled between 1999 and 2003 to advance their work under the SBA contract. (*Id.* ¶ 19.)

The next allegations come directly from the amended complaint:

20. In early February, 2002, Perfect Communications (then eScout), learning of the SBAExchange contract, had a meeting with MMG and SBA and using political influence, began a process of trying to undermine NexGen's

---

[2] The SBA's Business Development 8(a) program's purpose is to assist small, disadvantaged business concerns to compete in the American economy through business development. 13 C.F.R. § 124.1.

position and substitute itself for all or part of the SBAExchange contract in direct violation of the SBA certification 8(a) program contract performance regulations.

21. eScout engaged in intentional and improper communications with SBA, Members of Congress, the White House Office of Management and Budget, and MMG calculated to cause damage to NexGen's relationship with its biggest customer by creating doubt in the SBA and its largest investor, MMG, as to NexGen's ability to perform its contract with the SBA.

22. eScout's actions led to SBA's termination of the contract with NexGen, resulting in NexGen's lost opportunity to at least $84 million in profits and to the frustration and ultimate destruction of the relationship between Nexgen and MMG/MSBDFA.

(Compl. ¶¶ 20-22.)

Plaintiffs further allege they contacted the law firm of O'Rourke & Cundra to investigate possible legal remedies. This contact resulted in a contract between Plaintiffs and O'Rourke & Cundra that included the firm's drafting and pursuit of lender liability claims. (*Id.* ¶¶ 24-25.) Plaintiffs also assert that O'Rourke & Cundra merged with Hall Estill in early 2004. (*Id.* ¶ 29.) Plaintiffs signed a new retainer agreement with Hall Estill in October 2005. (*Id.* ¶ 40.) According to Plaintiffs, various attorneys at O'Rourke & Cundra and Hall Estill worked on Plaintiffs' legal matters (*Id.* ¶¶ 32-33, 38, 53), but they failed to file in a timely fashion complaints against eScout, SBA, and the State of Maryland (*Id.* ¶¶ 54-56, 60-61). Hall Estill allegedly admitted it had allowed the statutes of limitation to lapse as to eScout and the State of Maryland. (*Id.* ¶ 61.)

In Hall Estill's motion to dismiss, it has provided copies of both retainer agreements, i.e., the original one with O'Rourke & Cundra and the later one with Hall Estill. (Mot. Dismiss Ex. 1, Ex. 2, ECF No. 38.) These may be properly considered by the court in ruling on this motion to dismiss because they are integral to and explicitly relied on in the amended complaint and Plaintiffs do not challenge the documents' authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

The basis for Count One is an alleged breach of the original retainer agreement, dated June 2, 2003, between O'Rourke & Cundra and two corporate entities, NexGen Solutions and what must be a related company, NexGen Commerce. To the extent that Howlette relies upon this agreement for an individual cause of action against Hall Estill (via O'Rourke & Cundra's alleged merger with the Defendant), he is without a case. His allegation that O'Rourke & Cundra undertook to represent him, separate and apart from NexGen, is undermined by the written agreement, which shows no such undertaking. Further, although Howlette may consider NexGen his alter ego, he has explicitly alleged that the underlying cause of action was based upon interference with a contract between the SBA and NexGen. He has never alleged that SBA had a contract with Howlette personally. Consequently, I conclude that the motion to dismiss as to Howlette's claim against Hall Estill must be granted.

Next, the court focuses on NexGen's claims against Hall Estill. The original retainer agreement, contrary to Plaintiffs' allegations, only covered the drafting of a complaint and nothing more. It did not require O'Rourke & Cundra to pursue litigation. In fact, it provided:

> This present retention excludes the filing and prosecution of such a complaint, although we may undertake that aspect of this matter by separate written retention agreement at a later date.

(Mot. Dismiss Ex. 1.)

To the extent that Plaintiffs' claims of malpractice rest upon a failure to file suit in a timely fashion, those claims cannot be premised upon this retainer agreement because it expressly excluded filing suit from the scope of work to which O'Rourke & Cundra agreed. Thus, although Plaintiffs may complain about the lapse of time in filing suit, any failure by the Defendant to file suit was not a breach of this agreement. Therefore, Plaintiffs' claim to relief in Count One must be dismissed.

Count Two is a legal malpractice claim based upon Hall Estill's undertaking to represent Plaintiffs. The October 2005 retainer agreement's subject matter was "[l]itigating a lender liability lawsuit against MMG and CDV [Community Development Ventures] on behalf of Nexgen Solutions, Inc[.] and Edward Howlette, Individually." (Mot. Dismiss Ex. 2.) Notably, the agreement says nothing about any contemplated suits against eScout, the SBA, or the State of Maryland. Thus, under neither the original agreement nor the second agreement was any lawyer or firm obligated to file suit against eScout, the SBA, or the State of Maryland.[3] Consequently, any failure to file suit against those parties was not a breach of any agreement. Plaintiffs have failed to allege facts that established a contractual duty by Hall Estill to file suit against these third parties and, as a result, have failed to establish a plausible claim of legal malpractice, i.e., a negligent breach of a contractual duty. The inevitable conclusion is that the motion to dismiss must be granted in all respects. Further, while Plaintiffs have made references to a desire to amend their complaint again if the motion is granted (Mem. Opp. 1, 3, 7), they have offered no proposed amended complaint nor any specific factual allegations that would overcome the deficiencies of their present amended complaint.[4] Accordingly, the dismissal shall be without leave to amend.

---

[3] Hall Estill also attached to its motion to dismiss a copy of a November 2004 settlement agreement between NexGen, represented by a different law firm, and the SBA. (Mot. Dismiss Ex. 3.) The agreement, apparently filed in another judicial proceeding, is not critical to the court's analysis of the instant motion, but is informative as to the seeming invalidity of a legal malpractice action premised upon a failure to sue the SBA on NexGen's behalf.

[4] Other deficiencies include a failure to allege sufficient facts establishing when an underlying cause of action accrued or when it lapsed or establishing a reasonable basis for the amount of claimed damages of $7 million. Additionally, it would be implausible for Plaintiffs to sue the SBA for interference with a contract to which the SBA was a party because Maryland law does not allow such. *See Blondell v. Littlepage*, 991 A.2d 80, 97-98 (Md. 2010). Moreover, Plaintiffs' claim of a cause of action against the State of Maryland seems to rest entirely upon unspecified actions of MMG. As the amended complaint makes clear, however, Plaintiffs settled their claims against MMG. (Compl. ¶ 62 (misnumbered as ¶ 58).) No independent cause of action against the State of Maryland can be discerned from the complaint. Finally, the

Motion for Costs

This motion is based upon the refiling of Plaintiffs' suit against Hall Estill following their voluntary dismissal without prejudice of the same claim that was asserted in a prior bankruptcy case.  Rule 41(d) states that in such a circumstance, the court may order the plaintiff to pay all or part of the costs of that previous action and may stay the proceedings until the plaintiff has complied.  Given that this case is being dismissed, the court declines also to award costs of the prior action.

A separate order will be entered to reflect the conclusions reached in this opinion.

Dated: January 28, 2011                      _____/s/_____
                                                               Catherine C. Blake
                                                               United States District Judge

---

allegations that lie at the heart of Plaintiffs' complaint, those made in paragraphs 20 through 22, are conclusional opinions and conjectures, unsupported by independent factual allegations that would allow a reader reasonably to infer misconduct by any third party.